IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Debra Cheney, | ) | |
| | ) | Civil Action No. 2:12-3366-TMC |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Carolyn W. Colvin,[1] | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff, Debra Cheney ("Cheney"), brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits under the Social Security Act ("SSA"). This matter is before the court for review of the Report and Recommendation ("Report") of the United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of social security cases in this district. (ECF No. 20).[2] The Report recommends that the Commissioner's decision be reversed and remanded for further administrative action.

**I. Background**

Cheney filed an application for disability insurance benefits on January 28, 2009, alleging that she became unable to work on December 8, 2008. Her application was denied

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Federal Rule of Civil Procedure 25(d), Colvin should be substituted for Michael J. Astrue as the defendant in this action.

[2] The magistrate judge's recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

initially and on reconsideration by the Social Security Administration. She requested a review by an administrative law judge ("ALJ"), and an ALJ conducted a hearing on June 2, 2011. On July 27, 2011, the ALJ issued a decision, finding that Cheney was not disabled as defined in the SSA. The ALJ found that Cheney suffered from a combination of severe impairments of fibromyalgia, chronic pain syndrome, depression, obesity and cervical and lumbar degenerative disc disease. The ALJ went on to find that Cheney's impairments did not meet or medically equal the criteria for any of the listed impairments. Accordingly, the ALJ proceeded to assess Cheney's residual functional capacity ("RFC"), finding that Cheney could perform a reduced range of light work. The ALJ concluded that Cheney could not perform her past relevant work, but that she could perform other jobs in existence in the national economy in significant numbers and, therefore, denied her claim.

The Appeals Council declined to review the ALJ's decision on September 28, 2012. Cheney then filed this action for judicial review. The magistrate judge filed her Report on December 31, 2013. (ECF No. 20). On January 17, 2014, the Commissioner filed objections to the Report (ECF No. 22), and on February 3, 2014, Cheney filed a reply to those objections (ECF No. 23). This matter is now ripe for review.

## II. Standard of Review

The federal judiciary has a limited role in the administrative scheme established by the SSA. Section 405(g) of the Act provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined . . . as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for

those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). Thus, in its review, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] own judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

However, "[f]rom this it does not follow . . . that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative agency." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Rather, "the courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that this conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

### III. Analysis

In her objections, the Commissioner contends that the magistrate judge erred by finding that: 1) the ALJ did not conduct a proper credibility analysis; 2) the ALJ did not properly consider Cheney's impairments in combination; and 3) the ALJ did not properly consider the medical opinions. The court addresses each objection in turn.

**A) Credibility**

In assessing credibility, the ALJ set forth a summary of Cheney's testimony. The ALJ then stated: "I note the majority of claimant's complaints were in response to suggestive and leading questioning, and many of her responses were prefaced by 'to be honest.' This type of testimony did not inspire confidence in the assertions made." (R. 27). The ALJ then set out the seven factors found in Social Security Ruling ("SSR") 96-7p, which are used in assessing credibility. (R. 28). Finally, the ALJ noted that much of Cheney's depression stems from her situational problems with her family and her medical records support this conclusion and conflict

with her testimony at the hearing that her depression was caused by her physical impairments. (R. 28).

The magistrate judge found that the ALJ's reliance on Cheney being asked leading questions was improper. (Report at 7). The magistrate judge then noted that she did not believe that counsel asked Cheney leading questions. *Id.* Additionally, the magistrate judge found that the ALJ overstated the number of times Cheney's prefaced her answers with "to be honest" as Cheney stated this only twice in 28 pages of testimony. *Id.* Further, the magistrate judge found that while the ALJ listed the factors set forth in Social Security Ruling ("SSR") 96-7p, there is no indication in the decision that the ALJ considered these factors because the ALJ "added only that [Cheney's] problems at home played a major role in her depression. *Id.* Finally, the magistrate judge stated that while there is evidence in the record supporting a finding that Cheney's depression is linked to her situational problems, the ALJ failed to draw a link from this conclusion to his finding Cheney less than credible. (Report 9-10).

The Commissioner objects and contends that the ALJ may consider the style of questioning and answering in assessing credibility. (Objections at 1). Further, the Commissioner contends the ALJ also may consider the demeanor of a claimant, which would include the ALJ's consideration of Cheney's statement "to be honest." (Objections at 2). The Commissioner contends an ALJ is not required to discuss each factor in SSR 96-7p and that testimonial inconsistencies are probative in a credibility analysis. (Objections at 2-3).

In assessing a claimant's statement of pain and other symptoms, the ALJ applies a two part process. 20 C.F.R. § 404.1529; *Craig*, 76 F.3d at 594. First, the ALJ must assess whether there is a medically determinable physical impairment that could reasonably be expected to produce claimant's symptoms. 20 C.F.R. § 404.1529(c)(1); *Craig*, 76 F.3d at 595.   Second, the

4

ALJ must evaluate the intensity and persistence of the pain, as well as the extent to which the claimant's symptoms and pain impact his or her ability to work. 20 C.F.R. § 404.1529(c)(1); *Craig*, 76 F.3d at 595. The ALJ evaluates the intensity and persistence of the symptoms and the extent to which they limit a claimant's capacity for work in light of all the available evidence, including the objective medical evidence. 20 C.F.R. 404.1529(c). "Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." *Hines v. Barnhart*, 453 F.3d at 565 n. 3 (citing *Craig,* 76 F.3d at 595).

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility, and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. *See Shivley v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984). When considering whether an ALJ's credibility determinations are supported by substantial evidence, the court does not simply replace its own credibility assessments for those of the ALJ. Rather, the court must scrutinize the evidence to determine if it is sufficient to support the ALJ's conclusions. In reviewing the record for substantial evidence, the court does not re-weigh conflicting evidence, reach independent determinations as to credibility, or substitute its own judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d. 1453, 1456 (4th Cir. 1990). Because the ALJ had the "opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989-990 (4th Cir.1984) (citing *Tyler v. Weinberger*, 409 F.Supp. 776 (E.D.Va. 1976)).

The Federal Rules of Evidence do not apply in social security hearings, and, therefore, as the magistrate judge noted, leading questions are not objectionable. However, that does not mean that an ALJ cannot consider that a claimant's testimony was led by counsel. An ALJ may consider that counsel was asked leading questions in assessing a claimant's credibility because leading may impact credibility. *See Perry v. Soc. Sec. Admin.*, C/A No. 2:12-cv-168-JMH, 2013 WL 4101932 (E.D. Ky. Aug. 13, 2013)(holding the ALJ made a proper observation when he inferred claimant was not entirely credible from the leading questions that claimant was asked); *Green v. Astrue*, C/A No. 1:11-cv-522, 2012 WL 2620017, *10 (S.D. Ohio July 5, 2012)(holding ALJ may consider whether claimant's testimony was elicited by leading questions); *McKinstry v. Astrue*, C/A No. 5:10-cv-319, 2012 WL 619112, * 7 (D.Vt. Feb. 23, 2012)("Prompted testimony may be subject to an adverse credibility inference."); *Burgos v. Astrue,* 2011 WL 1642734 (S.D.N.Y. Apr. 29, 2011)(holding claimant's testimony was not credible because he did not mention back pain until prompted by counsel).

While it may not be erroneous to consider whether counsel asked leading questions, considering the informality of these hearings before the ALJ, perhaps the better practice would be for the ALJ to inform counsel during the hearing of his concerns regarding leading questions. Moreover, in this case, because the ALJ himself acknowledged at the beginning of the hearing that the hearing was an informal proceeding (R. 43), and never expressed any concerns over the leading questioning, the ALJ should not have adversely considered such questioning when assessing Cheney's credibility. Furthermore, the ALJ was clearly erroneous when he noted that "many" of Cheney's responses were prefaced by "to be honest." As the magistrate judge pointed out, Cheney responded in this manner only twice. However, the court does not find these considerations to be determinative of whether the ALJ erred in his credibility determination. The

ALJ did not base his entire credibility determination on whether counsel asked leading questions or how her responses were prefaced by "to be honest." He merely noted counsel asked leading questions and her responses were prefaced by "to be honest." The ALJ then preceded to analyze Cheney's credibility.

In considering the record and the ALJ's entire credibility analysis, the court disagrees with the magistrate judge's finding that there is not substantial evidence to support the ALJ's determination that Cheney's testimony regarding the intensity, persistence, and limiting effects of her symptoms was not credible. As the Commissioner argues, an ALJ is not required to discuss each factor enumerated in SSR 96-7p. "Rather the decision must contain 'specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Clore v. Colvin*, C/A No. 2:13-cv-0023-FDW, 2014 WL 294640, * 6 (W.D.N.C. Jan. 27, 2014) (citing SSR 97-7p).

Furthermore, the court cannot agree with Cheney that the ALJ did not include his reasons for negatively assessing her credibility in his decision. Although Cheney may disagree with the result that the ALJ reached based on the application of this two-step process, the record is clear that the ALJ applied the correct legal standard in assessing Cheney's credibility, and it is not the role of this Court to re-weigh the evidence and determine whether Cheney's testimony is credible. *See Craig*, 76 F.3d at 589. Because it is proper for the ALJ to consider inconsistencies in the record, the ALJ did not err in discussing the inconsistencies between the record and Cheney's testimony regarding the source of her depression and stressors.

In assessing Cheney's RFC, the ALJ determined that there was no evidence of aggressive treatment for Cheney's fibromyalgia.  (R. 30).  The magistrate judge states that the ALJ gives no indication of what aggressive treatment one with fibromyalgia should receive.  (Report at 11).  She also notes that after Cheney was diagnosed with fibromyalgia, Dr. Muthamma Machimada gave her a cortisone injection. *Id.* And furthermore, the magistrate judge states that Cheney returned to Dr. Hedden with pain complaints because she could not afford the co-pay to see Dr. Machimada. *Id.*   Reviewing the record, however, it appears the cortisone injection was in regard to Cheney's deQuervain's tenosynovitis, which is a condition affecting the tendons on the thumb side of the wrist.   In his treatment notes from June 15, 2009, Dr. Machimada specifically states that, with regard to Cheney's polygarthralgias, he would check her blood work and follow up with her.  (R. 295).  Cheney returned to Dr. Machimada one month later on July 17, 2009, and he started her on Mobic, a nonsteroidal anti-inflammatory drugs or NSAID.  (R. 290).  Less than a month later on August 7, 2009, Cheney was seen by Dr. Hedden complaining of insomnia, headache, and frequent urination.  (R. 334).  He saw her again on September 8, 2009, for back pain and Dr. Hedden noted that Cheney was also being treated by Dr. Machimada for ongoing back pain, and would return to him as soon as she could come up with the co-pay.  (R. 333).   Dr. Heddedn noted that his physical exam of Cheney "shows all of her pain to be in the S1 area diffuse across the back, no point tenderness to palpation." *Id*.

While fibromyalgia is a condition which eludes objective measurement and is difficult to assess and treat, the ALJ did not err in noting that Cheney's fibromyalgia was treated in a routine and conservative manner.    *See Rowe v. Astrue*, No. 08-24-HRW, 2008 WL 4890228, at *3 (E.D.Ky. Nov.7, 2008) ("With regard to Plaintiff's symptoms, the record reveals mostly conservative treatment as well as trigger point injections for her fibromyalgia"); *Singleton v.*

*Astrue*, 542 F.Supp.2d 367, 2008 WL 859256, *10 (D.Del. March 31, 2008) (in evaluating a plaintiff's credibility, ALJ did not err in considering, among other factors, that "none of [p]laintiff's treating physicians identified any specific functional limitations arising from her fibromyalgia or other conditions that would render her totally disabled," and plaintiff had received only conservative, routine, care).[3]

When considering whether an ALJ's credibility determination is supported by substantial evidence, the court does not replace its own credibility assessment for that of the ALJ; rather, the court scrutinizes the evidence to determine if it is sufficient to support the ALJ's conclusion. *Coleman v. Astrue*, 2011 WL 3924187, at *15 (S.D.W.Va. Sept.7, 2011); *see Hays*, 907 F.2d at 1456 (holding that in reviewing the record for substantial evidence, the court does not re-weigh conflicting evidence, reach independent determinations as to credibility, or substitute its own judgment for that of the Commissioner). The court concludes that the ALJ conducted the proper credibility analysis and cited substantial evidence to support his finding that Cheney's subjective complaints were not entirely credible.

### B) Combination of Impairments

The magistrate judge found that the ALJ failed to adequately consider Cheney's impairments in combination, in particular Cheney's fibromyalgia and irritable bowel syndrome. (Report at 12). The magistrate judge took issue with the ALJ's reference to Cheney's "history" of fibromyalgia and stated that the ALJ failed to acknowledge that fibromyalgia is difficult to diagnose as there is no objective medical tests to confirm its presence. *Id*. The magistrate also stated the ALJ seems to have failed to understand Cheney's irritable bowel syndrome. *Id*.

---

[3] "Furthermore, SSR 96-7p lists the type of treatment that a claimant receives as an appropriate factor to consider when rendering a credibility determination, and nothing in this Ruling provides an exception for fibromyalgia." *Vincent v. Astrue*, 2008 WL 596040, * 16 (N.D. Ind. March 3, 2008).

The Commissioner objects and argues that Cheney has not alleged any limitations from a combination of her fibromyalgia and irritable bowel syndrome and, moreover, as the ALJ noted, there is no evidence that Cheney's bowel difficulties lasted long after treatment. (Objections at 4). The Commissioner argues the ALJ stated he had specifically considered Cheney's impairments in combination and even if the ALJ did not, Cheney has not shown any harm. *Id.*

The magistrate judge states that the ALJ "seemingly failed to consider that 'abnormal frequency of [defecation] requiring constant trips to the bathroom are likely to place great strain on a person who is in constant pain." (Report at 13)(citation omitted). The magistrate judge cites Cheney's testimony at the hearing where she stated that because of her irritable bowel syndrome, at times, she went to the bathroom seven or eight times a day and could not work or had to go home. (Report at 13).

While irritable bowel syndrome certainly could cause limitations on a person's ability to work, Cheney also testified that she had not missed significant time from work during 2008, and that she "would miss a day here or there because also along with the problems that [she was] having, I also have irritable bowel syndrome." (R. 50). Cheney has failed to provide any additional or increased limitations supported by the record that would result from this impairment. *See Gassaway v. Astrue*, C/A No. 8:07-4083-HFF-BHH, 2009 WL 462704, at * 10 (D.S.C. Feb.23, 2009) (finding no error in the ALJ's assessment of the effect of obesity in combination with the claimant's other impairments and noting that the claimant offered no argument as to what limitations she would experience as a result of her obesity). Her "objection stops largely at the accusation that the ALJ's consideration is too thin, which, as the plaintiff contends, is the appropriate legal point, considering the applicable standard of review, but fails to take the additional step of suggesting how the outcome could have been different. In other

words, there is a failure to demonstrate anything more than the harmlessness of the error." *Wright v. Astrue*, 2:10-cv-02449DCN, 2011 WL 5403070 (D.S.C. Nov.8, 2011), adopting 2011 WL 5403104 (Oct. 18, 2011). Accordingly, the court finds the ALJ adequately considered Cheney's impairments in combination.

### C) Medical Opinions

The magistrate judge determined that the ALJ erred in his treatment of several medical source opinions. The Commissioner objects to the magistrate judge's recommendation as discussed more fully below.

When evaluating a claimant's application for disability benefits, the ALJ "will always consider the medical opinions in [the] case record together with the rest of the relevant evidence [she] receive[s]." 20 C.F.R. §§ 404.1527(b), 416.927(b). Medical opinions are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite [her] impairment(s), and [her] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). When determining a claimant's RFC, the ALJ must consider and address medical source opinions, and "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7.

Generally, the ALJ will give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). Furthermore, even greater weight should be allocated to the opinion of a treating physician because that physician is usually most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *Id.* §§ 404.1527(c)(2), 416.927(c)(2). The medical opinion of a

11

treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.  20 C.F.R. §§ 404.1527 and 416.927; *Mastro v. Apfel,* 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater,* 76 F.3d 585, 590 (4th Cir.1996).

In deciding the weight to be given to medial opinions, the ALJ is to consider: (1) length of the treatment relationship and frequency of evaluation; (2) nature and extent of the treatment relationship, (3) degree to which an opinion is supported by relevant evidence and explanations; (4) consistency of an opinion with the record as a whole, (5) whether the source is a specialist in the area relating to the rendered opinion; and (6) any other factors which tend to support or contradict the opinion, including "the extent to which an acceptable medical source is familiar with the other information in [a claimant's] case record.  *Id.* §§  404 .1527(c)(2)-(6), 416.927(c)(2)-(6).

However, medical opinions on issues reserved to the Commissioner are treated differently than other medical opinions.  Medical opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance, because "giving controlling weight to such opinions would, in effect, confer upon the [medical] source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine when an individual is disabled ."  SSR 96-5p, 1996 WL 374183 *2. \

**I. Dr. James N. Ruffing**

The ALJ gave "no weight to the opinion of Dr. James N. Ruffing that [Cheney's] persistence depression would overwhelm her capacity to maintain her concentration, persistence, and pace required in a typical work environment." (R. 32). The ALJ noted that Cheney's daily activities, including her caring for others, did not support Dr. Ruffing's opinion. *Id.*

While the magistrate judge noted that an ALJ does not have to mention every piece of evidence, the magistrate judge determined that the ALJ here committed error by failing to evaluate evidence in the record which potentially supports Cheney's claim. (Report at 17). Specifically, the magistrate judge noted that the ALJ failed to indicate that he had "adequately considered" Cheney's ability to engage in daily activities and the ALJ's decision to reject Dr. Ruffing's opinion on this basis is not supported by substantial evidence. *Id* The magistrate judge also found that Dr. Ruffing's opinion is not so different from Dr. Ron O. Thompson's opinion in that Cheney has problems with persistence needed to engage in basic work activities. (Report 15-16).

The Commissioner objects contending that there was conflicting evidence regarding Cheney's daily activities and the daily activities which the ALJ found were inconsistent with Dr. Ruffing's opinion. (Objections at 5). Additionally, the Commissioner contends that the opinions of Drs. Ruffing and Thompson were inconsistent. She contends that Dr. Thompson concluded that Cheney had problems with persistence and the ALJ agreed and limited Cheney to simple, routine, and repetitive tasks, while Dr. Ruffing concluded Cheney was entirely disabled due to concentration problems. (Objections at 6).

Reviewing the record the court agrees that there is conflicting evidence regarding whether Cheney took care of her family or they cared for her. (R. 59-61, 164-65, 194-95, 332,

13

340, 422, 437, 438, 439). However, it is not for the court to re-weigh the evidence. Further, the court finds that, contrary to the magistrate judge's conclusion, Dr. Thompson's opinion is quite different than Dr. Ruffing's opinion. Dr. Thompson concluded that Cheney "did not seem to have any major difficulties with concentration and attention, although [he] suspect[s] that persistence over time would be more difficult for [Cheney] given her . . . major depressive disorder." (R. 349). On the other hand, Dr. Ruffing concluded that Cheney's depression "would overwhelm her capacity to maintain her concentration, persistence, and pace required in a typical work environment." (R. 299). The court finds the two opinions to be different as Dr. Ruffing opined that Cheney was disabled due to concentration difficulties and Dr. Thompson opined only that persistence would be difficult for Cheney. The ALJ agreed with Dr. Thompson's conclusion and, in light of her concentration difficulties, limited Cheney to simple, routine, and repetitive tasks. (R. 26). Reviewing the record and the ALJ's decision, substantial evidence supports the ALJ's decision to discount Dr. Ruffling's opinion.

### ii. Dr. Nicole Hynes

The ALJ gave little weight to the opinion of Dr. Nicole Hynes, a rheumatologist, who opined that Cheney could not currently work regularly as Cheney is "caught up in her pain." (R. 31). The ALJ found the opinion was conclusory and not based on medical or psychological tests or evaluations. The ALJ also noted that such a determination is one reserved for the Commissioner and, moreover, the ALJ noted that the opinion was issued in October 2008 and did not account for treatment after that time. *Id.*[4]

---

[4] As the magistrate judge points out, Dr, Hynes saw Cheney on January 27, 2009. (Report at 17 n.7). The ALJ's reference to October 2008 is clearly a typographical error as the ALJ states earlier in his decision that Cheney was seen by Dr. Hynes in January 2009. (R. 20).

The magistrate judge found that the ALJ erred in his weighing of Dr. Hynes' opinion. (Report at17).  First, the magistrate judge disagreed with the ALJ statement that Dr. Hynes' opinion was an opinion reserved to the Commissioner. The magistrate judge stated that Dr. Hynes' opinion was an opinion on the severity of Cheney's impairments and not an opinion as to whether Cheney is disabled under the SSA.  *Id.*  The magistrate judge then noted that the ALJ discounted Dr. Hynes' opinion because it did not account for later treatment.  (Report at 17). The ALJ found that the opinion given at the beginning of the relevant period of alleged disability supported Cheney's claim of disability.   *Id.*   And further, she noted that Dr. Hynes made recommendation with the hope that Cheney's condition would improve, and she was not opining that Cheney was permanently disabled. (Report at 17-18). Finally, the magistrate judge took exception to the ALJ's statement that Dr, Hynes' opinion was conclusory and based upon the fact that at that time Cheney was caught up in her pain.   (Report at 18).  The magistrate judge then summarizes the treatment notes of Dr. Hynes and notes that Dr. Hynes diagnosed Cheney with a chronic pain syndrome, which the magistrate judge notes can be a disabling condition. *Id.*

The Commissioner objects and contends that the ALJ did not give more weight to Dr. Hynes' opinion because Dr. Hynes thought Cheney would improve and therefore Cheney's disability would not last at least twelve months, predated significant treatment, and was speculative. (Objections at 6).   Moreover, the Commissioner contends that the ALJ correctly noted that Dr. Hynes' opinion was not well-supported by objective evidence.  *Id.*

As noted above, medical opinions on issues reserved to the Commissioner, such as whether a claimant is unable to work, are not entitled to controlling weight.  *Morgan v. Barnhart,* 142 F. App'x 716, 722 (4th Cir. 2005) (holding ALJ did not err in concluding opinions Plaintiff could not work were legal conclusions). Here, the ALJ was correct to note that Dr.

Hynes' opinion that Cheney could not currently work is an opinion on an issue reserved for the Commissioner and is, therefore, not entitled to special weight. 20 C.F.R. § 404.1527(e); 20 C.F.R. § 416.927(e). Moreover, opinions of treating physicians that are not well-supported by diagnostic and clinical findings or are inconsistent with other substantial evidence are not entitled to controlling weight. Reviewing the record and the ALJ's decision, substantial evidence supports the ALJ's decision to give little weight to Dr. Hynes' opinion.

### iii. Josie Kokarev

The ALJ gave little weight to the opinion of Josie Kokarev, a licensed social worker, who opined that Cheney was unable to perform her prior work as claims adjuster. The ALJ found that such a determination is reserved for the Commissioner and also discounted this opinion because Dr. Kokarev is not an acceptable medical source. (R. 31). The magistrate judge found that the ALJ erred by failing to evaluate Dr. Kokarev's opinion on issues such as impairment severity and functional effects. (Report at 22).

The Commissioner objects and contends that because Dr. Kokarev was not an acceptable medical source, her opinion was not entitled to any special deference. (Objections at 7). And in any event, the Commissioner contends that the ALJ gave several reasons for discounting this opinion: 1) there was no record of Cheney having suffered three episodes of decompensation as defined in the regulations (R. 31); 2) the opinion stated Cheney was physically unable to work which was beyond a counselor's expertise (R. 32); and 3) Kokarev assigned a GAF score of 51 to 60 to Cheney, which indicates only moderate limitations, at most (R. 32). (Objections at 7).[5]

---

[5] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF score of 51–60 indicates that the individual has "[m]oderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning. . . ." Diagnostic and Statistical Manual of Mental Disorders Text Revision 34 (4th ed.2000). A GAF score of 61-70 indicates that the person has some mild symptoms or "some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* at 34. The court notes that in

The SSRs distinguish between opinions from "acceptable medical sources" and "other sources." *See* 20 C.F.R. §§ 404.1513(d), 416.913(d). SSR 06-03p further discusses "other sources" as including both "medical sources who are not acceptable medical sources" and "non-medical sources." Only acceptable medical sources can establish the existence of a medically-determinable impairment, give medical opinions, and be considered treating sources whose opinions may be entitled to controlling weight. SSR 06-03p. An ALJ is required to at least consider the opinion of such a non-acceptable medical source, especially when there is evidence in the record to suggest that the non-acceptable medical source had a lengthy relationship with the claimant and can present relevant evidence as to the claimant's impairment or ability to work. SSR 06-03p.

Here, the ALJ noted that Kokarev is not an acceptable medical source. However, the ALJ considered her opinion, and found that it was not supported by the record. The ALJ noted that there is no evidence in the record that Cheney had experienced three periods of decompensation as described in the regulations.[6] Further, as the ALJ noted, Kokarev's opinion is inconsistent with Cheney's GAF scores of 51 and 65, indicating at worst only moderate symptoms.[7] The ALJ gave a comprehensive explanation which is supported by the record for

---

a later revision, the DSM stopped utilizing the GAF scale, due in part to its "conceptual lack of clarity." Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed.2013).

[6] The magistrate judge discounted this reason by stating that the questionnaire which Kokarev completed defined "episodes of decompensation" (R. 272). While the questionnaire defined episodes of decompensation differently than the SSRs, the ALJ correctly stated that there was no evidence in the record that Cheney had experienced three episodes of decompensation "as this is described in the regulations." (R. 32).

[7] In response to the Commissioner's objections, Cheney contends that the ALJ ignored that she was assigned a GAF score of 35 on August 10, 2009. (R. 270). The GAF score of 35 is found in Kokarev's opinion, which the ALJ gave little weight to and, moreover, the record shows that Kokarev treated Cheney from September 11, 2008, to March 27, 2009 (R. 270). Other than Kokarev's opinion based upon her treatment of Cheney which ended 4½ months earlier, there is no evidence in the record supporting a GAF score of 35 on August 10, 2009.

why he gave little weight to Kokarev's opinion. Accordingly, substantial evidence supports his decision to afford Kokarev's opinion little weight.

## IV.  Conclusion

Therefore, after a thorough review of the record, the court declines to adopt the Report. Rather ,based upon the foregoing, the court **AFFIRMS** the Commissioner's decision.

**IT IS SO ORDERED.**

s/Timothy M. Cain<br>
United States District Judge

March 26, 2014<br>
Anderson, South Carolina